IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL GROSSMAN<br>127 Acorn Lane<br>Vorhees, NJ 08043<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PENNSAUKEN SCHOOL DISTRICT<br>1695 Hylton Road<br>Pennsauken, NJ 08110<br>　　and<br>PENNSAUKEN TOWNSHIP BOARD OF EDUCATION<br>1695 Hylton Road<br>Pennsauken, NJ 08110<br><br>　　　　Defendants. | CIVIL ACTION<br><br>DOCKET NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Michael Grossman (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against the Pennsauken School District and Pennsauken Township Board of Education (*hereinafter* collectively referred to as "Defendants") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq*.), the Age Discrimination in Employment Act ("ADEA" – 29 U.S.C. §§ 621 *et seq*.),[1] the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.), the New Jersey Law Against Discrimination ("NJ LAD"), and applicable New Jersey common law. Plaintiff

---

[1] Plaintiff intends to amend his complaint to include disability discrimination and retaliation claims under the ADA and ADEA once his claims have been administratively exhausted with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issues a right-to-sue letter.

asserts, *inter alia*, that he was discriminated against and unlawfully terminated by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants are deemed to reside where they are subjected to personal jurisdiction, rendering Defendants residents of the District of New Jersey.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant Pennsauken School District is a public-school district that serves students in kindergarten through twelfth grade from Pennsauken, New Jersey, with an address as

set forth in the above-caption. At the time of his termination, Plaintiff was employed at the Alfred E. Burling High School within the Pennsauken School District.

8. Defendant Pennsauken Township Board of Education is an organization that operates the Public Elementary and Secondary Schools within the Pennsauken School District. Plaintiff's paystubs and W-2 forms list Pennsauken Township Board of Education as Plaintiff's employer located at the address set forth in the above-caption.

9. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendants.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 56-year-old male.

12. Plaintiff was employed by Defendants for approximately two years as a science teacher, from on or about November 5, 2018 until his unlawful termination (discussed further *infra*) on or about June 30, 2020.

13. Throughout Plaintiff's tenure with Defendants, he was a hard-working employee who performed his job well, receiving several above satisfactory evaluations.

14. At the time of his termination, Plaintiff was employed physically within Alfred E. Burling High School ("ABHS"), located at 3600 Harris Avenue, Pennsauken, NJ 08110. ABHS is located within the Pennsauken School District and operated by the Pennsauken Township Board of Education.

15. In September of 2019, Plaintiff had been transferred to ABHS, which is commonly

referred to as an "alternative school." As such, the school can be described as educating primarily troubled youths, those with behavioral problems, and others with attendance concerns.

16. During his last approximate year of employment with Defendants, Plaintiff was primarily supervised by ABHS Principal, Gregory Munford, Jr. (*hereinafter* "Munford") and Supervisor of Special Services, Grades 9-12, Amy Collins (*hereinafter* "Collins"). Plaintiff was also indirectly supervised by the Superintendent, Ronnie Tarchichi (*hereinafter* "Tarchichi"), as are all of Defendants' personnel.

17. All non-tenured faculty such as Plaintiff are subject to annually-renewed contracts each year, and notice of non-renewal for public teachers in New Jersey must be received on or before May 15th of each year.

18. On or about May 1, 2020, Plaintiff was provided with a letter identifying that his contract was not being renewed for the 2020-2021 school year due to "performance" reasons. Plaintiff opposed his non-renewal and requested a Donaldson hearing, which took place on May 12, 2020.

19. By letter dated May 13, 2020, Plaintiff was informed that Defendants conclusively would not "offer [him] re-employment." Thus, effective May 12, 2020, Plaintiff's contract was not going to be renewed for any subsequent year within Defendants. Plaintiff's termination, however, was deemed effective as of June 30, 2020 (the end of the school year *for faculty*).

20. Plaintiff believes and therefore avers that his termination was actually premised upon (unlawful) discriminatory and retaliatory criteria based on his age and health conditions (set forth in more detail *infra*).

21. For example, at all relevant times herein, Munford and Collins were aware of Plaintiff's serious physical health problems, including but not limited to hip and leg conditions

(which was evidenced by Plaintiff's obvious difficulty in walking at times).

22. As a result of Plaintiff's aforesaid health conditions, Plaintiff was limited in his ability (at times) to perform some daily life activities, such as walking, sitting, and working (among other daily life activities).

23. Despite his aforementioned health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times (discussed *infra*).

24. For example, leading up to his termination, Plaintiff had been trying to coordinate with Defendants' management a hip surgery for the summer of 2020 (which could have, depending upon complications, caused a slightly-delayed return to work in the fall of 2020). Nonetheless, Plaintiff's time off from work (even if limited) would have been a medical accommodation and/or protected under the Family and Medical Leave Act ("FMLA").

25. Additionally, in or about early March of 2020, Plaintiff suffered a serious work-related injury, which may not have been as severe to someone much younger and with no pre-existing health problems. Specifically, a very troubled student intentionally tripped Plaintiff, causing him to fall and suffer serious complications to his already ongoing hip problems.

26. As a result of his aforesaid work-related injuries, Plaintiff was in very substantial pain and had limited mobility. Plaintiff promptly reported the work injury to Defendants' management and opened a worker's compensation claim.

27. Because of the severity of his aforesaid work-related injuries/health conditions, Plaintiff was unable to physically work at ABHS; however, despite Plaintiff's injuries, Tarchichi insisted that Plaintiff continue performing light-duty work from his residence.

28. All levels of management, including Tarchichi, Munford, and Collins, were well

aware of Plaintiff's serious medical conditions/complications, worker's compensation submission, and need for an earlier-than-expected medical leave of absence (*see* Paragraph 24, *supra*).

29. Shortly into Plaintiff's work-injury related medical leave, the national Covid-19 pandemic struck, and Plaintiff's leave transitioned to remote employment (as students were also converted to a virtual education platform).

30. In or about April of 2020, Defendants (and in particular, Tarchichi) elected to move forward with a decision to not renew Plaintiff's upcoming contract (a decision that was conveyed to Plaintiff as of May 1, 2020).

31. Defendants' purported rationale for Plaintiff's non-renewal and effective termination - "performance" reasons – was completely false and pretextual because Plaintiff's termination closely followed Plaintiff's worker's compensation claims and urgent medical leave.

32. Separately and apart from the discrimination and retaliation that Plaintiff was subjected to because of his work-related injuries/health conditions and requests for accommodations (medical leave), Plaintiff was also subjected to discrimination and retaliation as a result of his advanced age.

33. For example, Munford and Collins both knew that Plaintiff was advanced in age when he transferred to ABHS. Moreover, Plaintiff had received an underwhelming evaluation administered by Collins earlier in January of 2020, which he perceived to be discriminatory in nature due to Collins' comments and actions. Specifically, Collins made discriminatory comments to Plaintiff on numerous occasions **suggesting he was just going to "retire"** anyway after this school year (a clear reference to his advanced age).[2]

---

[2] It is well recognized that any suggestion an employee "retire" constitutes objective evidence of age discrimination (let alone multiple times in an adamant manner*). See, e.g.*, *Sesso v. Mercy Suburban Hosp.*, 2013 WL 961625, at *4 (E.D. Pa. 2013) (explaining any suggestion that any employee retire is evidence of discriminatory animus based on age and holding such statements are sufficient if credited by a jury to find a termination based upon age

34. Additionally, upon Plaintiff's information and belief, Collins went to Tarchichi on at least two occasions to advise him that Plaintiff was first planning to retire in December of 2019 and then again in June of 2020.

35. Not only were Collins aforesaid age-related comments regarding Plaintiff's retirement discriminatory in nature, they were also completely untrue as Plaintiff had never indicated to Collins or any other member of Defendants' management that he intended to retire at any time.

36. Plaintiff objected to the inaccurate contents of his evaluation from Collins, in the form of a letter rebuttal on or about February 11, 2020, in which he complained of Collins' comments that he exhibited "limited" engagement because he "did not want to be here anymore" and "would be retiring" soon. However, he never received any response to response or feedback from his complaints.

37. Plaintiff also expressed to Tarchichi in February of 2020 that Defendants' management, including but not limited to Collins, appeared to not want him to continue teaching and informed Tarchichi that it was unfair/inaccurate that Collins kept telling him that Plaintiff would be retiring soon; and as a result, gave him a less-than-desirable evaluation (a rank of 2 of

---

discrimination). Moreover, where a plaintiff presents sufficient direct evidence, the Court need not consider whether that claim may proceed under a *McDonnell Douglas* theory. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("'[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.'" (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985))). "[I]n *Gross v. FBL Financial Services, Inc.,* the Supreme Court further held that a plaintiff bringing an age discrimination claim "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Cellucci v. RBS Citizens, N.A.*, 987 F. Supp. 2d 578, 586 (E.D. Pa. 2013)(citation omitted). Direct evidence means evidence sufficient to allow the jury to find that "the 'decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision'" to fire him. *Connors v. Chrysler Fin. Corp.,* 160 F.3d 971, 976 (3d Cir. 1998) (quoting *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); *see also Anderson v. Consol. Rail Corp.,* 297 F.3d 242, 248 (3d Cir. 2002) (same). Such evidence "leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it" when he made the challenged employment decision. *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1097 (3d Cir. 1995).

5).

38. In response to Plaintiff's aforesaid concerns of age discrimination, Tarchichi, simply texted "I'm fine with you being there brother, I'm glad your [sic] staying." Tarchichi further explained in text to Plaintiff that he should just take the recommendations in the negative evaluation "and work on them brother" (as to the next school year) – effectively dismissing Plaintiff's concerns.

39. Despite Tarchichi confirming that as of February of 2020, Plaintiff would remain employed with Defendants for the foreseeable future, Plaintiff was abruptly notified on or about May 1, 2020, that his employment with Defendants was being terminated effective June 30, 2020.

40. Plaintiff avers that the only intervening events from Tarchichi's written confirmation of "glad [I'm] staying" in or about February of 2020 and the notice of his termination on or about May 1, 2020, was his serious work injury and urgent medical leave. Moreover, even if Plaintiff's alleged "performance" concerns were purportedly based on the January 2020 evaluation, the evaluation was reliant upon internal discriminatory management.

41. Plaintiff believes and therefore avers that he was actually terminated because of (1) his advanced age; (2) his concerns of age discrimination; (3) his known and/or perceived disabilities; (4) his record of impairment; and (5) his requested accommodations.

## COUNT I
**Violations of the New Jersey Law Against Discrimination (NJ LAD)**
**([1] Actual/Perceived/Record of Disability Discrimination and [2] Retaliation)**

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff suffered from qualifying health conditions under the NJ LAD which affected his ability (at times) to perform some daily life activities including, but not limited to walking, sitting, and working (among other daily life activities).

44. Plaintiff kept Defendants' management informed of his serious health conditions and need for medical treatment throughout his tenure with Defendants.

45. Despite Plaintiff's aforementioned health conditions and limitations, he was still able to perform the duties of his job well with Defendants; however, Plaintiff did require reasonable medical accommodations at times.

46. Plaintiff requested reasonable accommodations from Defendant, including but not limited to not a medical leave to care for and treat his aforesaid health conditions (including upcoming hip surgery).

47. Plaintiff was terminated from Defendants shortly after requesting and/or utilizing reasonable medical accommodations.

48. Plaintiff believes and therefore avers that he was terminated by Defendants due to (1) his known and/or perceived disabilities; (2) his record of impairment; and/or (3) his requested accommodations (discussed *supra*).

49. These actions as aforesaid constitutes violations of the NJ LAD.

### COUNT II
### Violations of the New Jersey Law Against Discrimination (NJ LAD)
### ([1] Age Discrimination and [2] Retaliation)

50. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51. While employed with Defendants, Plaintiff was subjected to discrimination based on his age by Defendants' management.

9

52. For example, Plaintiff was treated disparately with respect to evaluations, policies, and termination contrary to individuals substantially younger than him.

53. By way of further example, Defendants' management made discriminatory age-related comments to Plaintiff, including but not limited to **suggesting he was just going to "retire"** on several occasions.

54. As a result of the disparate and discriminatory treatment Plaintiff was subjected to because of his advanced age, Plaintiff complained to Defendants' management.

55. In close proximity to Plaintiff's concerns of age discrimination, he was abruptly notified on or about May 1, 2020 that he was being terminated from his employment with Defendants effective June 30, 2020.

56. Plaintiff believes and therefore avers that his termination was due to his advanced age and his concerns of age-related comments/discrimination.

57. These actions as aforesaid constitute unlawful age discrimination under the NJ LAD.

## COUNT III
### Violations of the Family and Medical Leave Act ("FMLA")
**(Interference & Retaliation)**

58. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

60. Plaintiff requested leave from Defendants, his employers, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

61. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

62. Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

63. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

64. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; and (4) making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA.

65. These actions as aforesaid constitute violations of the FMLA.

## COUNT IV
### Common-Law Wrongful Discharge
**(Public Policy Violation)**

66. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

67. Upon information and belief, Plaintiff was terminated in substantial part for making a claim for worker's compensation benefits and/or seeking worker's compensation benefits and/or for his work-related injuries (as discussed *supra*).

68. It is against New Jersey's public policy for an employee to be terminated for making a worker's compensation claim and/or seeking worker's compensation benefits. These

actions as aforesaid constitute wrongful termination in New Jersey. *See Stewart v. County of Hudson*, Docket No. A-0477-09T3, 2011 N.J. Super. Unpub. LEXIS 1965, at *34 (N.J. Super. Ct. App. Div. July 22, 2011).

69.    The temporal proximity and retaliatory animus between Plaintiff's claims for worker's compensation and his termination creates an inference that his termination was in retaliation for making such claims.

70.    These actions as aforesaid constitute wrongful termination in New Jersey.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendants are to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.    Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

  F. Plaintiff is to be awarded any and all statutory enhancements available as a matter of law.

  G. Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).

           Respectfully submitted,

           **KARPF, KARPF & CERUTTI, P.C.**

      By: _____
           Ari R. Karpf, Esq.
           3331 Street Rd.
           Two Greenwood Square, Suite 128
           Bensalem, PA 19020
           (215) 639-0801

Dated: July 31, 2020